## Case No. 8,256.

### The LEONARD.

[3 Ben. 263; 1 Chi. Leg. News, 313; 3 Am. Law Rev. 779; 1 Leg. Gaz. 30.] [1]

District Court, N. D. New York. April 6, 1869.

ADMIRALTY JURISDICTION — CONTRACT OF AFFREIGHTMENT—WATERS WITHIN A STATE.

Where a libel was filed against a vessel upon a contract to carry cargo on board of her from New York City to Troy, in the same state, to recover

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 3 Am. Law Rev. 779, contains only a partial report.]

damages for an injury, from negligence, received by the cargo on the voyage, the owners of the vessel and cargo all being residents of New York state: *Held*, that the cause was one of admiralty jurisdiction.

This was a suit against the barge Leonard, arising out of a contract of affreightment, for the transportation of certain merchandise, for hire, from the city of New York to the city of Troy. The libel alleged that the claimants, McManus and Smith, were the owners of the barge at the several times in the libel mentioned, and were engaged in the business of common carriers of goods, wares, and merchandise, for hire, between the cities of New York and Troy, in the state of New York, upon the Hudson river, a navigable stream, in which, between the said two cities, the tide ebbs and flows, and which is subject to the maritime laws of the United States, and was so subject during the time thereinafter mentioned. It also averred that the claimants carried on their said business upon said river, in and upon the said barge Leonard, owned by them; and then set forth a contract between the libellants and the owners of the barge, for the carriage and transportation from the city of New York to the city of Troy, upon the said barge, of forty-two barrels of sugar and one hundred and twenty-nine chests of tea, of the value of $6.679.80, then belonging to the libellants, and the receipt of such sugar and tea by the claimants. It also alleged, in the usual form, that the owners of the barge, in consideration of the premises and of a certain reasonable reward agreed to be paid by the libellants, agreed with the libellants safely and securely to carry and transport such sugar and tea, as such common carriers aforesaid, upon the barge Leonard, from New York to Troy, within a reasonable time, and, on the arrival thereof at Troy, to deliver the same to the libellants. It then averred that the claimants commenced the transportation so contracted for upon the said Hudson river, in and upon the said barge Leonard, as such common carriers; that they did not safely and securely carry and deliver such sugar and tea according to their contract, and that, by the unsafe and defective condition of the barge while on said voyage, and while such sugar and tea were therein and in the possession of the claimants, and by the carelessness and negligence of the claimants and their servants in the management of such barge, large quantities of water came into said barge, and upon and into such sugar and tea within this judicial district, whereby the libellants sustained damages to the amount of $5,288.35. The claimants filed, with their claim and answer, an exceptive allegation, in the nature of a demurrer for want of jurisdiction. In this it was alleged that this court had no jurisdiction of the matters contained in the libel; that the same were not matters of admiralty and maritime jurisdiction, the libel being filed to recover upon a contract of af-

freightment to be performed wholly within the state of New York, and the said barge not being engaged in commerce upon the high seas, or between ports lying in different states, but solely and exclusively engaged in the internal commerce of the state of New York, and the libellants and claimants all being residents and citizens of that state.

Mr. Hale, for claimants, cited Allen v. Newberry, 21 How. [62 U. S.] 224; Maguire v. Card, Id. 148; The Brooklyn [Case No. 1,938]; The Commerce, 1 Black [66 U. .] 574; 3 Story, Const. §§ 1663, 1665; 1 Kent, Comm. 366–377; Thomas v. Lane [Case No. 13,902]; Philadelphia, etc., R. Co. v. Philadelphia & H. de G. Tow-Boat Co., 23 How. [64 U. S.] 209, affirming same case [Case No. 11,085]; The Magnolia, 20 How. [61 U. S.] 296; The Plymouth, 3 Wall. [70 U. S.] 20; Gibbons v. Ogden, 9 Wheat. [22 U. S.] 194, 195.

W. A. Beach, for libellants, cited Conkl. Adm. pp. 21, 26, 166, 167, and notes; The Jefferson, 10 Wheat. [23 U. S.] 428; Peyroux v. Howard, 7 Pet. [32 U. S.] 324, 343; The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175; The Genesee Chief, 12 How. [53 U. S.] 443; The Hine v. Trevor, 4 Wall. [71 U. S.] 555; New Jersey Steam Nav. Co. v. Merchants' Bank of Boston, 6 How. [47 U. S.] 344; The Vanderbilt, 6 Wall. [73 U. S.] 225.

HALL, District Judge. The contract of affreightment set forth in the libel in this case was for the transportation, by water, on board a vessel engaged in the business of commerce and navigation; and it was to be wholly performed within the ebb and flow of the tide. The contract, in its subject-matter and in its whole extent and character, was exclusively maritime; and the waters on which it was to be performed, from the commencement to the termination of the voyage required for its performance, were wholly within the jurisdiction of the admiralty, so far as the question of admiralty jurisdiction can depend upon locality or the character or navigable capacity of the waters on which a marine tort has been committed or a maritime contract is to be performed. Such being the character of the contract, and such the description of the waters upon which it was to be performed, it is supposed that no admiralty judge would have hesitated, during the half century next succeeding the adoption of the constitution of the United States and the passage of the judiciary act of 1789 [1 Stat. 73], to maintain the jurisdiction now invoked. Indeed, it is believed that no suggestion, that the admiralty jurisdiction of the courts of the United States might be restricted by the limitations upon the constitutional power of congress to regulate commerce, is reported as having been made, in any court of the United States, until the case of New Jersey Steam Nav. Co. v. Merchants' Bank of Boston, 6 How. [47 U. S.] 344, came before the supreme court of the United States in 1848. The suggestion then made by Mr.

Justice Nelson, though a mere obiter dictum, was nevertheless entitled to very grave consideration as the opinion of a judge justly distinguished for the soundness and ability of his judicial decisions.

The subsequent case of The Genesee Chief [12 How. (53 U. S.) 443], in which the supreme court overruled prior decisions and decided that the jurisdiction of the admiralty courts was not confined to tide waters, and also decided that congress had the authority, under the constitutional grant of admiralty and maritime jurisdiction, to extend that jurisdiction to the Great Lakes and their connecting waters, although it had no authority to do so under the grant of power to regulate commerce, seemed to be sufficient to more than countervail the force of Mr. Justice Nelson's suggestion in the Merchants' Bank Case; and it was not until the cases of Allen v. Newberry, 21 How. [62 U. S.] 244, and Maguire v. Card, Id. 248, decided in December term, 1858, that the jurisdiction of the admiralty, in cases like the present, was afterwards considered questionable. In neither of the two cases just alluded to does it appear that the question was argued; and though the decisions have been followed in the district and circuit courts, in parallel cases, upon the ground of their paramount authority, it is nevertheless quite certain that they have not, in all cases, received the approval of the bench and bar of those courts.

In the case of Western Transp. Co. v. The Great Western [Case No. 17,443], which was a case of salvage, I had occasion, several years since, to consider the cases of Allen v. Newberry and Maguire v. Card [supra], in connection with the act of 1845, the case of The Genesee Chief, and other cases which appeared to me to be opposed to the doctrine of the two cases just alluded to. In speaking of these cases I then said: "I confess that I am not able to perceive any solid ground for thus restricting the admiralty jurisdiction of the national courts. The constitutional grant of admiralty jurisdiction has no such limitation. It is an independent grant of judicial power or jurisdiction, unconnected with the grant of commercial power; and, to adopt the language of Mr. Justice Grier, in the case of The Magnolia, 20 How. [61 U. S.] 301, where it is used for another purpose, 'the admiralty jurisdiction, surrendered by the states to the Union, had no such bounds as exercised by themselves, and is clogged with no such conditions in its surrender.' In The Genesee Chief it was said by the chief justice: 'Nor can the jurisdiction of the courts of the United States be made to depend on regulations of commerce. They are entirely distinct things, having no necessary connection with one another, and are conferred in the constitution by separate and distinct grants. The extent of the judicial power is carefully defined and limited, and congress cannot enlarge it to suit even the wants of commerce, nor for the more convenient execution of its

commercial regulations.' It was conclusively shown in that case, that the power of regulating commerce could not be made the foundation of jurisdiction in the courts of the United States, and I cannot satisfy myself that the courts of the Union are justified in interpolating the language or limitations of the grant of the commercial power into the grant of judicial power and jurisdiction, for the purpose of restricting, any more than enlarging, their jurisdiction. That jurisdiction must rest upon the constitutional grant of judicial power, and upon the acts of congress passed in pursuance thereof; and if neither the constitution nor the acts of congress has prescribed a particular limitation to a power conferred in unrestricted terms, such limitations should not be interposed by judicial construction."

Notwithstanding the opinions thus expressed, the decision in Allen v. Newberry, or that in Maguire v. Card, would have been followed in a case of precisely the same character; and although subsequent cases have certainly furnished very strong additional reasons for rejecting the authority of at least one of those decisions. it is not intended to intimate that they would not now be followed in like cases. It is sufficient to say that the case now under consideration is distinguishable from both. The case of Allen v. Newberry, which is, in other respects, most like the present, not having arisen upon tide-water, it is probable that it was for that reason held to be excluded from the jurisdiction of the admiralty by the act of 1845 [5 Stat. 726]. And several cases reported since the decision in the case of Western Transp. Co. v. The Great Western [supra] have furnished additional and entirely sufficient reasons for declining to apply the doctrines, apparently deducible from the decisions in Allen v. Newberry, and Maguire v. Card, to this case. The cases which justify this course will now be referred to.

In a case of collision against the propeller Commerce, decided by the supreme court, in December term, 1861, 1 Black [66 U. S.] 578, Mr. Justice Clifford, in delivering the opinion of that court, and in answer to an objection that the court had no jurisdiction because it did not appear that the propeller was engaged in foreign commerce, or in commerce between the states, said: "Admiralty jurisdiction was conferred upon the government of the United States by the constitution, and in cases of tort is wholly unaffected by the considerations suggested in the proposition." He also said: "When the district courts were organized, they were authorized by congress to exercise exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction. including all seizures under laws of impost, navigation or trade of the United States. where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burden, within their respective districts, as well

as upon the high seas. That provision of the judiciary act [1 Stat. 73] remains in full force and unrestricted as applied to the navigable waters of the Hudson, and all the other navigable waters of the Atlantic coast which empty into the sea, or into the bays and gulfs that form a part of the sea. All such waters are, in truth, but arms of the sea, and are as much within the admiralty and maritime jurisdiction of the United States as the sea itself."

Mr. Justice Clifford, in the case of Carpenter v. The Emma Johnson [Case No. 2,430], decided by him in the circuit court for the Massachusetts district, had previously asserted the jurisdiction of the admiralty in a suit brought upon a contract of affreightment from Boston to Chatham, both being ports of Massachusetts, when a part of the voyage required for its performance was to be made upon the high seas; and he evidently was not inclined to apply the doctrines of Allen v. Newberry and Maguire v. Card to other than parallel cases.

In 1866, in the case of The Mary Washington [Case No. 9,229], Mr. Chief Justice Chase, after citing and considering the cases of New Jersey Steam Nav. Co. v. Merchants' Bank, The Genesee Chief, and Allen v. Newberry [supra], overruled an objection to the jurisdiction in a case like the present. The libel in that case was upon a contract of affreightment, to be performed on tide-waters wholly within the state of Maryland; and the case may, therefore, be considered as in all respects like the present, so far as this question of jurisdiction is concerned. It was heard by the chief justice on an appeal from the district court, and was doubtless fully argued by counsel and deliberately considered by the court. In a carefully prepared opinion, the chief justice affirmed the jurisdiction, notwithstanding the cases of Allen v. Newberry and Maguire v. Card.

In the December term of the same year, in the case of The Hine v. Trevor, 4 Wall. [71 U. S.] 555, the supreme court of the United States, through Mr. Justice Miller, declared that the "admiralty jurisdiction, to which the power of the federal judiciary is by the constitution declared to extend, is not limited to tide-water, but covers the entire navigable waters of the United States;" that "the jurisdiction of admiralty causes arising on the interior waters of the United States other than the lakes and their connecting waters, is conferred by the act of September 24th, 1789,"—the judiciary act already referred to; and it necessarily follows that in this case the court has the broad and unrestricted jurisdiction conferred by that act.

In the case of The Vanderbilt [6 Wall. (73 U. S.) 225] in December term, 1867, the supreme court affirmed the decree of the circuit court, awarding to the libellants the damages sustained by them in a collision upon the Hudson, opposite the city of Troy, and no objection to the jurisdiction appears

to have been suggested, either by the counsel or by the court.

In the case of The Brooklyn [Case No. 1,938], the learned Judge Blatchford, of the Southern district of New York, not only stated it to be the settled law and practice of the district and circuit courts of that district to maintain the jurisdiction in cases of tort, arising out of the purely internal commerce of the state upon the tide-waters of the Hudson river, like those in which it had formerly been denied by Mr. Justice Nelson under the authority of Allen v. Newberry; but he also stated that he knew that that learned justice did not adhere to the views expressed by him in the cases of tort in which he had denied such jurisdiction. Indeed, the decision of the supreme court in the cases of The Commerce and The Vanderbilt [supra], place the jurisdiction in such cases beyond further question.

The jurisdiction of the admiralty in all cases of maritime tort, arising upon the tide-waters of the Hudson, being thus firmly established, it is hardly possible that the jurisdiction in this case would not be upheld by the court of last resort. As before stated, the contract of affreightment, out of which this suit has arisen, in its subject-matter and in its whole extent and character, was exclusively maritime; its performance required maritime service only; it was to be performed wholly within the ebb and flow of the tide; and the negligence charged as the cause of the damage for which the suit is brought, is likewise of a purely maritime character.

Any action for a marine tort committed on the vessel while engaged in the performance of the contract—from the time the first cask of sugar or chest of tea was put on board, until the last was landed—no matter in what part of her voyage it was committed. would have been within the jurisdiction of the admiralty; and it is impossible, in my judgment, to sustain by any principle of law or of reason, the jurisdiction of the admiralty in such cases of tort, and at the same time to deny it in a case like the present.

To uphold the distinction sought to be maintained in this case, would require a court of admiralty which recognizes no common law forms of action, to maintain its jurisdiction in a case brought by a shipper, against the owners of the Leonard as common carriers for hire, for negligence in the carriage of goods entrusted to their care, when the negligence charged was by proper allegations made the technical basis of the libellant's demand, and to deny it under the same state of facts appearing upon the hearing, if the formal and technical allegations of the libel (though in substance the same) made the contract to carry, and its non-performance, the basis of the alleged right of recovery.

The conclusions stated render it unneces-

sary to consider the point made by the libellant's counsel, that the gravamen of the claim against the Leonard was negligence, and that the action might therefore be properly considered as founded upon a marine tort, and consequently within the jurisdiction of the admiralty under the cases of The Commerce, The Brooklyn, and The Vanderbilt. Upon the whole case I do not doubt that the jurisdiction should be maintained.